# 13-3857

## United States Court of Appeals
## for the Second Circuit

─────────────────────

STATE OF TEXAS, et al.,

*Appellees-Respondents,*

v.

PENGUIN GROUP (USA) INC., et al.,

*Appellants*

─────────────────────

On Appeal from the United States District Court
for the Southern District of New York
No. 12-03394 (DLC)

---

**EMERGENCY MOTION TO STAY PENDING APPEAL**

---

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, D.C.  20036
(202) 955-8500

Theodore J. Boutrous, Jr.
  *Counsel of Record*
Daniel G. Swanson
Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
(213) 229-7804
tboutrous@gibsondunn.com

*Attorneys for Appellant Apple Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellant Apple Inc. states that it has no parent corporation. To the best of Apple's knowledge and belief, and based on publicly filed disclosures, as of April 23, 2014, no publicly held corporation owns 10% or more of Apple's stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................ 1

BACKGROUND ................................................ 3

LEGAL STANDARD.............................................. 7

ARGUMENT ................................................... 9

I.    Apple Is Likely To Succeed On Appeal........................... 10

    A.    Apple's Success On Appeal In The DOJ Appeal Would Moot The Damages Trial And Compel Reversal Of Class Certification...................................... 10

    B.    Apple Will Likely Prevail On Its Class Certification Appeal........... 13

II.   Apple Will Suffer Irreparable Harm Absent A Stay ................. 17

III.  A Stay Will Not Harm Plaintiffs Or The Public Interest ............. 19

CONCLUSION ................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Altamura v. L'Oreal, USA, Inc.*,
  2013 U.S. Dist. LEXIS 122992 (C.D. Cal. Aug. 26, 2013) ................................18

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013)..................................................................................9

*Bell Atl. Corp v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ........................................................................17

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ........................................................................12

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004) .........................................................................11

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 2001) ...........................................................................8

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ........................................................................15

*Brown v. Wal-Mart Stores, Inc.*,
  2012 WL 5818300 (N.D. Cal. Nov. 15, 2012)......................................... 9, 19, 20

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) .........................................................................15

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) .............................................................................8

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)........................................................................ 1, 16, 17

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ...........................................................................11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...............................................................17

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) .............................................................................7

*Howard Heiss Dental Labs. Inc. v. Dentsply Int'l Inc.*,
    602 F.3d 237 (3d Cir. 2010) ...............................................................12

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................9

*In re Elec. Books Antitrust Litig.*,
    2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014)............................ 4, 5, 6, 11, 15, 16

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ...............................................................17

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ...................................................................17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013)....................................... 1, 9, 14, 17, 20

*In re Sumitomo Copper Litig.*,
    262 F.3d 134 (2d Cir. 2001) ...............................................................10

*In re Urethane Antitrust Litig.*,
    2006 WL 3021126 (D. Kan. Oct. 23, 2006)..........................................8

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997)............................................................18

*Jenkins v. Hyundai Motor Financing Co.*,
    2008 WL 2268319 (S.D. Ohio 2008) .................................................20

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    791 F.2d 1356 (9th Cir. 1986) ............................................................11

*LaRouche v. Kezer*,
    20 F.3d 68 (2d Cir. 1994) .....................................................................8

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) ...............................................................................9

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) .............................................................1, 15

*Nken v. Holder*,
  556 U.S. 418 (2009) .........................................................................7, 8

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ...............................................................18

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931) ..........................................................................16

*United States v. Apple Inc.*,
  952 F. Supp. 2d 638 (S.D.N.Y. 2013) .............................. 3, 4, 11, 12, 17

*Wachtel v. Guardian Life Ins. Co. of Am.*,
  453 F.3d 179 (3d Cir. 2006) .................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)....................................................................1, 15

## Statutes

15 U.S.C. § 1 ......................................................................................4, 11

15 U.S.C. § 15 ........................................................................................11

## Rules

Fed. R. Civ. P. 23(f) ...............................................................................6, 9

## Other Authorities

Manual for Complex Litigation (4th) § 21.28 ......................................2, 8

iv

Appellant Apple Inc. moves this Court pursuant to Federal Rule of Appellate Procedure 8(a) for an emergency stay of class notification and the damages trial that the district court has scheduled for July 2014 in two related cases. Apple also requests that this Court grant an immediate administrative stay (before 6:00 pm on Friday, April 25, 2014) of class notice (scheduled to commence on Monday, April 28, 2014, at 4:00 pm ET) while it considers Apple's motion. Apple moved for a stay in the district court, which the court denied. Apple notified plaintiffs in both cases of this motion, and they intend to oppose.

## INTRODUCTION

In a series of highly controversial decisions, the district court found that Apple conspired with five publishers to fix the price of e-books, imposed an onerous injunction on Apple, and certified a class action seeking hundreds of millions of dollars in damages. The court's certification order impermissibly relieved plaintiffs of critical elements of their individualized claims, and denied Apple its ability to defend itself at the impending July 2014 trial. The court's manifestly erroneous decision conflicts with decisions of the Supreme Court (*e.g.*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)), this Court (*e.g.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)), and other circuits (*e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013)). Apple is therefore

likely to prevail on appeal.

The court's certification order and the States' entire case for damages hinge on the court's contested and erroneous decision in the related injunctive relief action brought by the Department of Justice (DOJ). Plaintiffs, their expert, and now the district court rely almost exclusively on that order to establish virtually every predicate fact for class certification and for the States' damages case against Apple. Apple has appealed both decisions—the judgment and injunction in the DOJ case and the class certification order—and if Apple prevails in *either* appeal, the entire landscape of this litigation will radically change.

The district court is nonetheless pressing forward with class notice and a trial in both cases in July, despite the irreparable harm to Apple's reputation among its consumers if class notice is disseminated, not to mention the confusion and expense from successive notices to consumers if the certification order is reversed.

"[C]ourt[s] should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination." Manual for Complex Litigation (4th) § 21.28. As a result, courts routinely stay class notification and trial while a 23(f) petition is pending and, if granted, while the certification order is reviewed. Moreover, because Apple's appeal in the DOJ case presents an additional basis for reversal, a stay is doubly warranted.

## BACKGROUND

Along with its launch of the iPad in early 2010, Apple opened the iBooks Store, in which Apple sold e-books as an "agent" of the e-book publishers. The agency model permitted each publisher to set its own prices and provided Apple "the same [30%] commission it was using in its App Store." *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 648, 659 (S.D.N.Y. 2013). Apple's entry into the e-book market brought much-needed "innovation and competition," and "having the creativity and commitment of Apple invested in the enhancement of a product like the iBookstore [was] extremely beneficial to consumers and competition." *Id.* at 708 & n.69. Apple's entry resulted in an explosion in the number of e-book titles available and a decrease in the overall price of trade e-books. *See* No. 13-3741, Apple's Opening Br. (Ex. A) at 51-52, 57.

Before Apple's entry, Amazon alone "dominated the e-book retail market, selling nearly 90% of all e-books." *Apple*, 952 F. Supp. 2d at 649. Amazon purchased e-books from the publishers wholesale and set the retail price itself, selling New York Times Bestsellers "as loss leaders at $9.99." *Id.* at 650. After the publishers moved to an agency model and began setting their own prices, some publishers increased the prices of certain e-books from what Amazon had been charging. And several class action plaintiffs, the DOJ, and 33 state attorneys general filed civil antitrust actions alleging that Apple and five publishers

3

conspired to raise, fix, and stabilize e-book prices in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *6 (S.D.N.Y. Mar. 28, 2014). The class actions and States' cases were assigned to Judge Cote by the Judicial Panel on Multidistrict Litigation for coordinated pre-trial proceedings. The district court scheduled a trial on injunctive relief in the DOJ and States' cases, with a trial on damages claims in the States' action to follow if necessary. Proceedings in the class actions were deferred while the DOJ and States' injunctive actions were tried.

Before trial in the DOJ and States' cases even started, Judge Cote announced her view that plaintiffs "w[ould] be able to show at trial" that Apple violated the Sherman Act. Ex. A at 10. And after a three-week bench trial, the district court found that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act," and entered judgment and a permanent injunction for plaintiffs. *Apple*, 952 F. Supp. 2d at 709. The district court *did not* find that "the [Agency] Agreements by themselves reflect an agreement in restraint of trade," and even acknowledged that the "record is equivocal on whether Apple itself desired higher e-book prices than those offered at Amazon." *Id.* at 698, 706 n.68. But the court nonetheless found that Apple entered into a conspiracy with the publishers "at th[e] initial meetings" it had with individual publishers, even though it was the very first time Apple even met the publishers and no agreements were reached. *Id.* at 703.

Apple filed its opening brief on appeal from the judgment and injunctions on February 25, 2014 (Ex. A).  As Apple argues in its opening brief, the district court's decision finding that Apple conspired with the publishers is premised on several reversible legal errors, which will require reversal of the district court's judgment and injunctions.  Apple's entry as an e-book retailer marked the *beginning*, not the end, of competition, and did not violate the antitrust laws.

With its appeal from the judgment and injunctions in the DOJ and States' cases pending, Apple moved in the district court to stay the class actions.  *See* No. 14-1092, Apple's 23(f) Petition (Ex. B) at 4.  The district court denied the stay, denied Apple's request for discovery related to class certification and antitrust injury and damages, and imposed an aggressive schedule that guaranteed that Apple would go to trial in (or settle) the class actions before this Court's ruling on the related appeal.  *Id.*  And on March 28, 2014, the district court certified a class consisting of millions of consumers in 23 jurisdictions who purchased e-books published by any of the publisher defendants from any retailer after Apple's entry. *In re Elec. Books*, 2014 WL 1282293, at *1.

In certifying the class, the district court relied heavily on its findings in the DOJ action, and precluded Apple from litigating several of those issues in the class action.  For instance, the court relied on its DOJ opinion to bar Apple from challenging injury in the class action due to the pro-competitive effects of its entry

into the e-book market.  Apple is similarly unable to contest injury as to purchasers of e-book titles that would not have been available at all absent the conspiracy due to "windowing" (some publishers' practice before Apple's entry of withholding many e-books from Amazon).  Ex. B at 16-17.  In other words, the district court used the very findings in the DOJ opinion that Apple is challenging on appeal to hamstring Apple's defense in the upcoming class action trial.

The court decided well before the class was even certified, in an unrelated order, that "[c]onsumers of e-books—including Apple's own consumers—suffered hundreds of millions of dollars in harm."  12-cv-2826, Dkt. 437, at 62.  The court then denied Apple's motion to exclude plaintiffs' expert, Dr. Roger Noll, and its request for a hearing on that motion.  *In re Elec. Books*, 2014 WL 1282293, at *24-*32.  And even though the court acknowledged that resolution of plaintiffs' *Daubert* motions was unnecessary to class certification (*id.* at *1), the court excluded the testimony of Apple's experts, Dr. Joseph Kalt and Mr. Jonathan Orszag, from trial and denied Apple's request for a *Daubert* hearing, severely limiting the company's defenses at trial.  11-md-2293, Dkt. 586.

Pursuant to Federal Rule of Civil Procedure 23(f), Apple petitioned this Court for permission to appeal the certification order on April 11, 2014.  Ex. B.

Four days after certifying the class, the district court approved dissemination of class notice to inform Apple's customers that they "could be affected by two

6

lawsuits … claim[ing] that there was a conspiracy involving … Apple to fix and raise retail prices of E-books," and that plaintiffs are seeking "$280 million" in damages attributable to Apple's conduct. 11-md-2293, Dkts. 587, 596, 597. Each class member will receive emails and postcards pointing them to a website and toll-free number to receive this information. 11-md-2293, Dkt. 590 ¶ 16. Class notice will be disseminated beginning on Monday, April 28, 2014, at 4:00 pm ET unless a stay is ordered. 11-md-2293, Dkt. 616.

Apple immediately filed a motion with the district court "for a stay of all proceedings, or, at a minimum, an order staying dissemination of class notice." 11-md-2293, Dkt. 603. Plaintiffs opposed Apple's motion on April 11, 2014. The district court denied Apple's motion on April 23, 2014. 12-cv-3394, Dkt. 505 (Ex. C). A combined trial for the class action and States' case is set for July 14, 2014.

## LEGAL STANDARD

This Court considers four factors in the exercise of its discretion to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The first two factors … are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Apple must show only that it has "a substantial possibility, although *less than a likelihood*, of success on appeal." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (emphasis added) (citation and internal quotation marks omitted); *see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010) (*Nken* "did not suggest that this factor requires a showing that the movant is 'more likely than not' to succeed on the merits").

A party faces irreparable harm where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 2001); *see also Nken*, 556 U.S. at 421 ("if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review").

While a 23(f) petition is pending, "court[s] should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of re-notification that may result from appellate reversal or modification after notice dissemination." Manual for Complex Litigation (4th) § 21.28; *see also In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *2-*3 (D. Kan. Oct. 23, 2006) (courts "ordinarily" stay class notice pending appeal). As a result, numerous courts have stayed notification of the class while the court of appeals rules on a 23(f) petition and the merits of the certification decision. *See*, *e.g.*, *Wachtel v.*

8

*Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 183 (3d Cir. 2006) ("grant[ing] a temporary stay of class notice … [and] later extend[ing] [the stay] indefinitely pending the resolution of the Rule 23(f) appeal"); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1077 (6th Cir. 1996) ("This court also granted a stay of the March 16 order, to the extent that it directed notice to the members of the class"); *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *5 (N.D. Cal. Nov. 15, 2012); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012).

## ARGUMENT

Apple has appealed the district court's decisions finding a conspiracy and certifying a class of millions of e-book purchasers—both of which were highly controversial, and cut against the "stringent standards" that govern the antitrust laws (*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 903 (2007)) and the "stringent" class certification standards that "exclude most claims" from class adjudication (*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013)).  And if this Court reverses in *either* the appeal from the judgment and injunctions *or* the certification of the class, there will be no notification of the class and no class action trial.

Apple is likely to prevail in *both* its appeals, and because it will suffer irreparable injury if plaintiffs notify the class that Apple has been found to have violated the antitrust laws, not to mention the enormous waste of resources on a

jury trial that may ultimately be mooted or retried, this Court should stay class notification and all proceedings in both the class actions and the States' case during the pendency of Apple's appeals.

## I.    Apple Is Likely To Succeed On Appeal

The district court's order certifying a class action compounds the errors in its DOJ order by relieving plaintiffs of critical elements of their claims, and allowing proof of injury and damages through a "formula" developed by plaintiffs' expert to "estimate" the average damages to the class. Ex. B at 14. The certification order is at the very least "questionable" and implicates "legal question[s] about which there is a compelling need for immediate resolution." *In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir. 2001). Apple is therefore likely to prevail on its 23(f) petition and subsequent appeal.

### A.    Apple's Success On Appeal In The DOJ Appeal Would Moot The Damages Trial And Compel Reversal Of Class Certification

The district court relied on numerous findings from its opinion in the DOJ action that have not been (and most of which cannot be) held to have any binding effect on *this* case. Plaintiffs' reliance on the order in the DOJ action is impermissible, and because the class plaintiffs and the States have tied their case so closely to the DOJ order, if this Court reverses the final judgment in that case (which it likely will, *see* Ex. A), the class actions and the States' case will indisputably crumble.

10

For example, the district court impermissibly relied on findings from the DOJ case to preclude Apple from disputing injury to the plaintiffs in the class action. "Injury" is necessary for plaintiffs to have standing, and it is a required element of plaintiffs' private antitrust claims. *See* 15 U.S.C. §§ 1, 15; *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (antitrust plaintiffs must demonstrate "(1) a violation of antitrust law; (2) injury and causation; and (3) damages") (citation omitted); *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) (same). And in order for a party to be "injured" and be entitled to damages, benefits the party received from the challenged conduct must offset any injury caused by the alleged conspiracy. *See*, *e.g.*, *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) (plaintiff "may recover only to the 'net' extent of its injury").

Apple demonstrated that its entry into the e-book market and the agency agreements created many benefits for consumers. Ex. A at 51. It is indisputably true that Apple's entry benefited consumers, as the district court recognized. *Apple*, 952 F. Supp. 2d at 708 n.69; *see also* Ex. A at 8-9, 55-58. But because the court had found that "Apple failed to show that 'the execution of the [agency agreements] had any pro-competitive effects'" in the rule of reason analysis in the DOJ opinion (*In re Elec. Books*, 2014 WL 1282293, at *15), the court's

certification order bars Apple from showing in the class trial that the pro-competitive effects of its entry into the e-book market through its agency agreements benefitted individual consumers (*see*, *e.g.*, Ex. B at 16-17).

Plaintiffs' damages model also relied heavily on the DOJ findings. Instead of undertaking an independent analysis of the e-book market to understand what would have happened to e-book prices "but for" the allegedly anticompetitive conduct, Dr. Noll simply interpreted the district court's decision in the DOJ action. For example, Dr. Noll testified that "the opinion establishes ... [that] there were no pro-competitive benefits that were accomplished by the price fixing conspiracy" and that therefore he "didn't have to get into an analysis of the potential pro-competitive justifications" when constructing his model. 11-md-2293, Dkt. 481-1 at 21:5-10, 58:3-8.

The district court's reliance on its findings in the DOJ case was error. The collateral estoppel effect of the ruling in the DOJ action remains an open—and contested—question. Ex. B at 16. Indeed, private injury was not an element of the DOJ case (*Apple*, 952 F. Supp. 2d at 645), and therefore any "findings" of injury in that case are ineligible for collateral estoppel here (*see Howard Heiss Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 248 (3d Cir. 2010); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005)). And because plaintiffs have pinned their entire theory of liability to the order in the DOJ case, a reversal of the final

judgment in that case would indisputably require reversal of class certification.

Moreover, it would make no sense to stay only the class action and let the States' case proceed to trial, because the States' case relies on the exact same evidence as the class actions, raises the same due process concerns, and hinges entirely on the judgment and injunction in the DOJ case, which is on appeal. In addition, Apple is seeking permission to appeal the district court's denial of its motion to dismiss the *parens patriae* claims of the States because states lack Article III standing to seek relief on behalf of their citizens (as opposed to in their sovereign or quasi-sovereign role) and due process requires the States to satisfy Rule 23's requirements before their citizens' claims can be tried in the aggregate. 12-cv-3394, Dkt. 506. In denying the motion to dismiss, the district court relied on its class-certification decision (12-cv-3394, Dkt. 500 at 24), and reversal of that decision could therefore require dismissal of the *parens patriae* claims.

### B.    Apple Will Likely Prevail On Its Class Certification Appeal

The district court also erred in allowing plaintiffs to prove injury to the class and the amount of damages through a "formula" that purports to estimate *average* damages to the class, but which results in millions of false positives and cannot actually determine which consumers were injured, or by how much. These errors by the district court will likely be reversed by this Court on appeal.

Dr. Noll lumped 1.3 million e-book titles into 502 arbitrary categories, and

then extrapolated each category's average percentage overcharge to every title within the category.  Ex. B at 12-13.  He then ran a regression purportedly "controlling for the factors" relevant to pricing e-books, "calculated the effect, if any, of Apple's anticompetitive conduct for each of these 502 combinations" in the form of an average percentage overcharge, and extrapolated each category's average percentage overcharge to every title within the category.  Ex. B at 12-13.

But the *average* effect of Apple's agency agreements on a *category* containing thousands of titles does not reveal anything reliable about the effect of the agreements on any given *title*.  Indeed, Dr. Gilbert—who testified for DOJ, and whose work is cited by the district court and relied upon by Dr. Noll—found that "approximately 17% of e-book sales prices either stayed the same or fell upon adoption of agency [agreements]."  Ex. B at 13; 11-md-2293, Dkt. 538 ¶ 60.  But Dr. Noll's model attributes overcharges to *all* of those sales, thus identifying injury where none exists, and (as Apple's expert explained) yielding millions of false positives.  Ex. B at 13; *accord Rail Freight*, 725 F.3d at 254-55.

Dr. Noll's damages model provides no reliable information about the effect of the agency agreements on any given e-book title, and therefore cannot even estimate (let alone establish) the actual amount of any overcharge to a given customer.  Yet the district court, while acknowledging that Dr. Noll's model "cannot explain much of the variation in prices of a given e-book title,"

14

nonetheless found that it established commonality and predominance under Rule 23. *In re Elec. Books*, 2014 WL 1282293, at *24, *28.

The Supreme Court has decisively rejected such a "Trial-by-Formula" approach, which uses "average[s] ... to arrive at the entire class recovery—without further individualized proceedings." *Dukes*, 131 S. Ct. at 2561. Plaintiffs themselves conceded that Dr. Noll used a "formula" to "estimate" damages. *Id.* at 14; 11-md-2293, Dkt. 423 at 14. Such a method for determining injury and damages cannot serve as the "glue" that binds together the proposed class (*Dukes*, 131 S. Ct. at 2552), because it impermissibly treats the putative class as a "fictional composite" and masks the "disparate individuals behind the composite creation." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).

The court's decision deprives Apple of its right to contest plaintiffs' highly individualized claims of injury by showing, for example, that prices of the purchased e-books would have been *higher* had Apple not entered the market. Rule 23, the Rules Enabling Act, and due process prohibit such "fluid recovery" in which liability is determined in the aggregate and "the right of defendants to challenge the allegations of individual plaintiffs is lost." *McLaughlin*, 522 F.3d at 232; *see also Dukes*, 131 S. Ct. at 2561; *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (a "class action cannot be certified in a way that eviscerates" a defendant's "due process right to raise individual challenges and defenses to

15

claims"). The court's certification order, in conjunction with its sharp discovery restrictions and premature rulings on the merits, has impermissibly stripped Apple of its ability to defend itself at trial against the claims of millions of absent individuals seeking hundreds of millions of dollars in damages.

The district court acknowledged that Dr. Noll's model does not show injury to every class member, yet dismissed this defect because damages "'calculations need not be exact'" in antitrust cases. *In re Elec. Books*, 2014 WL 1282293, at *26 (quoting *Comcast*, 133 S. Ct. at 1433). But that statement in *Comcast* relates to *quantifying damages* and does not excuse plaintiffs from demonstrating that each class member suffered some *injury*. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) ("there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount"). The latter concept is jurisdictional and a core element of plaintiffs' claim that cannot be brushed aside in order to certify a class.

Nor is it true, as the district court asserted, that "it is widely recognized that a class will often include persons who have not been injured by the defendant's conduct." *In re Elec. Books*, 2014 WL 1282293, at *22 (internal quotation marks omitted). This Court has held that "no class may be certified that contains members lacking Article III standing" (*Denney v. Deutsche Bank AG*, 443 F.3d

16

253, 264 (2d Cir. 2006)), and this principle applies equally to the "antitrust injury" that every antitrust plaintiff must prove (*see*, *e.g.*, *Rail Freight*, 725 F.3d at 254; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008); *Bell Atl. Corp v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)).

Finally, Dr. Noll's damages model impermissibly conflicts with plaintiffs' liability theory.  Plaintiffs' entire claim is based on their (and the district court's) erroneous theory that $9.99 pricing would be common absent the conspiracy.  *See* 11-md-2293, Dkt. 432 ¶ 13 (describing $9.99 as the "industry standard"); *Apple*, 952 F. Supp. 2d at 701 (referring to the "$9.99 industry norm").  But in Dr. Noll's model, $9.99 is the but-for price for just 1% of e-books (with only 10% sold near the $9.99 price point (11-md-2293, Dkt. 538 ¶ 18)), which directly contradicts plaintiffs' and the court's liability theory.  This stark disconnect between Dr. Noll's model and plaintiffs' theory of liability alone precludes class certification. *Comcast*, 133 S. Ct. at 1433.

## II.    Apple Will Suffer Irreparable Harm Absent A Stay

Dissemination of class notice would undoubtedly and irreparably harm Apple's business here.  Plaintiffs desire to "inform" Apple's customers that they are part of a class purportedly injured by a price-fixing scheme and that they have supposedly overpaid for e-books.  In fact, the district court's approved notice to

putative class members explains that plaintiffs are seeking "$280 million" in damages as a result of "a conspiracy involving … Apple to fix and raise retail prices of E-books." 11-md-2293, Dkts. 587, 596, 597. Apple indisputably possesses one of the most valuable brands in the world, and plaintiffs' class notice risks damaging the goodwill and reputation that Apple has spent many years creating. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("loss of reputation, good will, and business opportunities" constitutes irreparable harm); *Altamura v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 122992, at *6-7 (C.D. Cal. Aug. 26, 2013) ("sending out classwide notification to the members of the New York class would unnecessarily damage its reputation if the New York class is decertified on appeal"); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (reversing trial court's decision approving the sending of class notice, citing the "serious and irreparable harm to [the defendant's] reputation and to its relationship with its employees").

Class notice should not be taken lightly. Once sent, it cannot be recalled—it is a bell that cannot be unrung. And if this Court reverses the certification of the class, then notice would have been unnecessarily sent to Apple's customers, and the parties would have to undertake another notification process in order to correct the prior notices. This would impose unnecessary burden and expense, and it would require Apple to deal with more inquiries and questions from many

18

confused customers, adding to the true cost of the class notice. *See Brown*, 2012 WL 5818300, at *4 ("curative notice to the class, perhaps many months or more after the initial class notice was disseminated ... would not be sufficient to stem the confusion that would arise in the event of a change to the class definition or decertification of the class altogether").

Absent a stay, there will likely be multiple rounds of notice, expenses related to customer confusion, and lost sales due to reputational injury, not to mention the millions of dollars Apple will be forced to spend to litigate the damages phase of the trial during the pendency of the appeal. This irreparable harm warrants a stay.

## III.    A Stay Will Not Harm Plaintiffs Or The Public Interest

Even while Apple's appeals are pending, consumers represented by the class and the States are receiving the $166 million settlement with the defendant publishers *amounting to over 76% of alleged damages on plaintiff States' calculation*. 12-cv-3394, Dkt. 242 at 2; *see also* Jay Greene, *E-book buyers given credits in settlement*, Chicago Tribune, Mar. 26, 2014, at C3 ("Amazon.com Inc. e-book customers received credits Tuesday as part of the $166 million price-fixing settlement"); Chris Reidy, *Deal benefits e-book customers*, Boston Globe, Mar. 27, 2014, at B8 (customers receive $3.17 for every New York Times best-seller purchased, and 73 cents for other books). There is thus no harm to consumers from any postponement of the trial. The July 14 trial date, which the court has

19

already postponed by two months, is arbitrary and can easily be rescheduled.

Nor is there any risk of ongoing antitrust violations. Apple is operating under an injunction, including a compliance monitor. And the publisher defendants are operating with all retailers, including Apple, under consent decrees. Thus, while the public has an interest in enforcing the antitrust laws, that interest will be respected during the appeal by way of the injunctions and consent decrees that have already been entered regarding this very case.

Moreover, "proceeding with class notice while the Rule 23(f) petition is pending could lead to confusion among the public and the absent class members" (*Rail Freight*, 286 F.R.D. at 94), and unnecessarily infringes on consumers' privacy interests (*see Brown*, 2012 WL 5818300, at *4). As a result, "[t]h[e] public interest consideration counsels in favor of staying class notice until after the court of appeals has acted on the [23(f)] petition." *Id.*; *see also*, *e.g.*, *Jenkins v. Hyundai Motor Financing Co.*, 2008 WL 2268319, at *5 (S.D. Ohio 2008).

## CONCLUSION

This Court should stay all proceedings in the district court, for both the class actions and the States' case, pending Apple's appeals. At a minimum, the Court should stay notice to class members pending resolution of Apple's 23(f) petition and any resulting appeal.

Dated:  April 23, 2014                    /s/ Theodore J. Boutrous, Jr.

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, D.C.  20036
(202) 955-8500

Theodore J. Boutrous, Jr.
  *Counsel of Record*
Daniel G. Swanson
Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
(213) 229-7804
tboutrous@gibsondunn.com